Signed: October 12, 2005

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    No. 01-45924 TD
                                         Chapter 7
MEDIA GROUP, INC.,

         Debtor.
_____/

**MEMORANDUM OF DECISION RE MOTION FOR SANCTIONS**

Lois I. Brady (the "Trustee"), the duly appointed chapter 7 trustee of the above-captioned estate, seeks civil contempt sanctions against Linda Shao and the Law Office of Linda Shao ("Shao") in the amount of $29,062.50 pursuant to 11 U.S.C. § 105(a).[1] For the reasons stated below, her motion will be granted.

---

[1] The moving papers also include a request for the costs incurred in prosecuting this motion. However, no such costs were quantified in the reply. To permit these additional costs to be quantified at a later date would simply perpetuate this litigation at still more cost to the estate and would not be in the estate's best interests. However, if Shao's future conduct requires the Trustee to file a new request for sanctions, the Court will consider the costs of prosecuting this motion at that time.

## BACKGROUND

Prior to the commencement of this bankruptcy case, Shao, an attorney, represented the above-captioned debtor (the "Debtor") in certain state court matters. According to Shao, the Debtor owed her attorneys' fees for her legal services. One of the litigation matters settled, and Shao received a settlement check made out jointly to her and the Debtor (the "Check"). According to Shao, the Debtor had previously agreed that any settlement payments would be applied to her outstanding bill. Shao sent the Check to the Debtor without endorsing it. She asked the principals of the Debtor (the "Officers") to endorse it and return it to her. Instead, the Officers deposited it in the Debtor's bank account. Despite the lack of Shao's endorsement, the bank (the "Bank") credited the Debtor's account with the amount of the Check.

Shortly thereafter, on November 5, 2001, the Debtor filed a chapter 11 bankruptcy petition. The automatic stay prevented Shao from suing the Debtor in state court for the improper deposit of the Check. However, Shao did file suit against the Officers and the Bank (the "State Court Action"). As a result of being sued, without obtaining relief from the automatic stay, the Bank debited the Debtor's bank account for the amount of the Check and interpleaded the funds in the State Court Action.

The chapter 11 case was not successful and, after approximately a year, the case was converted to chapter 7. The Trustee was appointed and, with Court approval, hired Reidun Stromsheim ("Stromsheim") as her bankruptcy counsel. Shortly

2

thereafter, Stromsheim filed a complaint against Shao, seeking, among other things, damages for violation of the automatic stay. The Court concluded that this claim violated Rule 9011 of the Federal Rules of Bankruptcy Procedure and imposed sanctions against Stromsheim in favor of Shao. This decision was upheld on appeal to the Bankruptcy Appellate Panel.[2]

Shao settled her claims against the Bank, but the State Court Action is apparently still pending against the Officers. On May 4, 2004, without seeking leave of the Court, Shao issued a subpoena (the "Subpoena") pursuant to the State Court Action, directing Stromsheim ("Stromsheim") to appear at a deposition on May 19, 2004. The Subpoena directed her to produce ten categories of documents as follows:

> 1. Any and all documents that may prove correspondences between any member of your law firm (including yourself) and Iling Chiang [one of the Debtor's principals], including but not limited to: phone logs, phone bills, phone notes, letters (however sent) and e-mails.
>
> 2. All records pertaining to any investigation involving Linda Shao made by or on behalf of your firm or the trustee before filing the complaint against Linda Shao in Adversary Proceeding # 02 7254 AT, of Bankruptcy Court case # 024485, including but not limited to: reports, phone logs, phone bills, phone notes, letters (however sent) and e-mails.
>
> 3. Any and all invoices that were ever submitted to the estate regarding your contacts with Iling Chiang.
>
> 4. Any and all documents that may prove correspondences between any member of your law firm (including yourself)

---

[2] The Trustee's adversary proceeding against Shao also sought an order directing turnover to her of the funds interpleaded with the state court. This eventually occurred, and the adversary proceeding was dismissed.

3

and Jeff Chiou [another of the Debtor's principals], including but not limited to: phone logs, phone bills, phone notes, letters (however sent) and e-mails.

5. Any and all documents that may prove correspondences between any member of your law firm (including yourself) and Scott Goodsale [sic] and any attorneys at Scott Goodsale's law firm, including but not limited to: phone logs, phone bills, phone notes, letters (however sent) and e-mails.

6. All records regarding any investigation of payments made by Media Group, Inc. Or the Media Group, Inc. Estate, to Scott Goodsale.

7. Any and all documents that may prove correspondences between any member of your law firm (including yourself) and any employee, agent or former employee of Media Group, Inc., including but not limited to: phone logs, phone bills, phone notes, letters (however sent) and e-mails.

8. Any and all correspondence between Lois Brady and Iling Chiang or Iling Chiang's attorney, including but not limited to: phone logs, phone bills, phone notes, letters (however sent) and e-mails.

9. Any and all correspondence between Lois Brady and Jeff Chiou or his attorney, including but not limited to: phone logs, phone bills, phone notes, letters (however sent) and e-mails.

10. Any and all documents that may prove correspondences between any member of your law firm (including yourself) and Far East National Bank or any of its attorneys or agents, including but not limited to: phone logs, phone bills, phone notes, letter (however sent) and e-mails.

The Court assumes that Iling Chiang and Jeff Chiou are the Officers. Scott Goodsale refers to Scott Goodsell ("Goodsell"), the attorney who represented the Debtor during the chapter 11 case.

Shao complains about the fact that Goodsell received a $40,000 pre-petition retainer from the Debtor and that the Trustee made no

4

attempt to recover this amount from him despite Goodsell's failure to file a fee application.³ Shao also contends that the Trustee and Stromsheim are percipient witnesses in connection with the State Court Action despite the fact that they were not appointed until well over a year after the Check was improperly deposited.

On May 7, 2004, Elizabeth Murphy ("Murphy"), Stromsheim's associate, wrote Shao, advising her that the Subpoena was inappropriate and asking her to withdraw it. Murphy asserted that a chapter 7 trustee and her counsel have quasi-judicial immunity in the performance of their functions and that the bankruptcy court that appointed them has the right to control the enforcement of any process against them. Murphy also noted that, from the list of documents requested in the Subpoena, it appeared that Shao was attempting to use state court process to investigate the Trustee's administration of the estate. She asserted that this was also improper.

Shao apparently refused to withdraw the Subpoena because, on May 10, 2004, Murphy wrote to Shao a second time. This letter gave Shao notice that the Trustee would be seeking an order from the bankruptcy court restraining the deposition. A complaint and application was filed later that day. The hearing on the application took place three days later, on May 13, 2004. The

---

³Goodsell filed an application seeking allowance of his attorneys' fees in the amount of $174,476.50 and costs on June 29, 2004. The application has yet not been noticed for hearing since there may be insufficient funds in the estate to pay chapter 11 expense claims.

5

Court granted the restraining order and scheduled a hearing on the Trustee's application for a preliminary injunction for June 2, 2004.

On May 24, 2004, Shao filed a motion to disqualify the Trustee in the adversary proceeding. On May 25, 2004, she filed a motion for leave to take the Trustee's deposition in the adversary proceeding. At the June 2, 2004 hearing, the Court denied the motion to disqualify the Trustee without prejudice to its being refiled in the main case on notice to all creditors. The Court continued the hearing on the motion for leave to take the Trustee's deposition to June 30, 2004 and granted a preliminary injunction until that date.

On June 16, 2004, Shao filed a motion to dismiss the adversary proceeding, scheduling it for hearing on July 29, 2004. On June 17, 2004, the Trustee filed a motion for summary judgment, scheduling it for hearing on June 30, 2004. On June 30, 2004, the Court continued the hearing on the Trustee's motion for summary judgment to July 29, 2004 and extended the preliminary injunction through that date.[4]

The hearing on the various motions and applications was continued several times thereafter at Shao's request, with the preliminary injunction remaining in effect. The hearing finally

---

[4]In the meantime, the Court ordered the Trustee to permit Shao to review any documents pertaining to the administration of the estate that were not privileged or work product. However, the Court ordered Shao to reimburse the estate for any cost incurred a result of the document review.

6

went forward on November 18, 2004. At that time, Shao argued that the proceeding should be dismissed because she acknowledged that she could not depose Stromsheim without leave of court. She contended that the Court had denied her motion for leave. The Trustee argued that her claim for damages for having to defend against the Subpoena should be resolved before the adversary proceeding was dismissed. She initially referred to this claim as being based on 11 U.S.C. § 362. During the course of the hearing, however, it was clarified that the claim was based on 11 U.S.C. § 105. The Court dismissed the adversary proceeding without prejudice to the Trustee's bringing her damage claim by motion in the main case.

On December 14, 2004, Shao filed a notice in the main case that she would be unavailable to appear in court or to respond to any motions from December 13, 2004 to May 19, 2005.[5] On July 21, 2005, the Trustee filed a motion for damages against Shao in the main case. The motion was originally noticed for hearing on August 18, 2005. At Shao's request, the hearing was continued October 6, 2005 to give Shao more time to file an opposition. Her opposition was filed on September 22, 2005. The Trustee filed a reply on September 29, 2005.[6]    Both parties appeared at the

---

[5] Inexplicably, in her opposition, Shao complains about the Trustee's eight month delay in filing the motion for sanctions.

[6] Shao filed a request to take judicial notice on October 3, 2005. She filed an objection to the Trustee's reply on October 4, 2005. These documents were filed out of time without leave of Court. Similarly, at the hearing on the motion for

7

hearing on October 6, 2005. At the conclusion of the hearing, the Court took the motion under submission.

## DISCUSSION

**A. SUMMARY OF ARGUMENT**

As noted above, the Trustee seeks civil contempt damages against Shao for the costs incurred by the bankruptcy estate defending against the Subpoena. These costs consist of Stromsheim's attorneys' fees in the amount of $29,062.50. The Trustee contends that, with limited exceptions, not applicable here, a party may not sue or attempt to enforce process against a bankruptcy trustee or her counsel in a forum other than the bankruptcy court without first obtaining leave of the bankruptcy court. She refers to this principle as the Barton Doctrine.[7] In support of this contention, she cites In re DeLorean Motor Co., 991 F.2d 1236, 1240-41 (6th Cir. 1993) and In re Dyer, 322 F.3d 1178, 1191 (9th Cir. 2003).

The Trustee also contends that it was improper for Shao to attempt to use the Subpoena to investigate the Trustee's administration of the bankruptcy estate. According to the Trustee, the documents listed in the Subpoena clearly indicate

---

sanctions, Shao cited several cases not included in her opposition brief. Neither the late filed documents nor the late cited cases will be considered.

[7]The name of the doctrine comes from the United States Supreme Court case establishing it: i.e., Barton v. Barbour, 104 U.S. 126 (1881)(improper to sue receiver without first obtaining permission of appointing court).

8

that this was Shao's intent. The Trustee asserts that Shao's actions constituted harassment and that the bankruptcy estate and its creditors should not have to bear the costs of the harassment.[8]

In response, Shao contends that the Trustee's motion was filed in retaliation for the Rule 9011 sanctions that she obtained against Stromsheim. She asserts that the Trustee has neglected her duty to preserve assets of the estate and has harassed and damaged Shao. She argues that she served the Subpoena on Stromsheim as a percipient witness, not in order to investigate the Trustee's administration of the estate. She complains that she was not given adequate notice that the Trustee intended to seek a temporary restraining order. She contends that there was no urgency in the Trustee's filing the application.[9]

Shao asserts that it is questionable whether leave of the appointing bankruptcy court is required before suing or deposing a bankruptcy trustee's attorney. However, she claims that she agreed to file a motion for leave to depose Stromsheim before the adversary proceeding was filed. Therefore, it was unnecessary for the Trustee to file the adversary proceeding, and no fees for

---

[8] The Trustee's motion is supported by the declarations of Stromsheim and Murphy. Attached to the Murphy declaration are a series of letters written by the Stromsheim Firm to Shao, attempting to persuade her to withdraw the Subpoena. Also attached is a detailed itemization of the work performed and fees requested.

[9] Shao also complains that she has never been served with a summons in the adversary proceeding. Since Shao appeared at the hearing on the application and since the adversary proceeding has since been dismissed, this issue is moot.

9

filing it are justified. At a minimum, she asserts, no fees are justified to the extent they were incurred after she filed her motion for leave to depose Stromsheim. She compares the Trustee's insistence on proceeding with the adversary proceeding seeking an injunction as similar to her insistence on proceeding with the adversary proceeding seeking damages for stay violation, which ultimately led to Stromsheim being sanctioned.

Finally, Shao contends that no sanctions can be imposed on her without clear and convincing evidence that she acted with malice. She asserts that no such evidence can be presented, particularly given the lack of any clear law as to whether the Barton Doctrine extends to a bankruptcy trustee's attorney.

In her reply, the Trustee disagrees that the fees and costs incurred after Shao filed her motion for leave to depose Stromsheim were unnecessary.[10] The Trustee notes that Shao never withdrew the Subpoena. She consistently maintained that she was entitled to take Stromsheim's deposition in the State Court Action without leave of the bankruptcy court. Moreover, the deposition was set for May 19, 2004. The Trustee did not act precipitously in seeking a temporary restraining order on May 10, 2004 given Shao's refusal to withdraw the Subpoena.

---

[10] The Trustee notes that she has only requested damages for costs incurred defending against the Subpoena and prosecuting the complaint for injunctive relief. She has eliminated any charges for defending against Shao's motion for leave to take Stromsheim's deposition.

10

The Trustee also contends that Shao is mistaken that the Court denied her motion for leave to depose Stromsheim on June 30, 2004. Rather, on that date, the hearing was continued due tp Shao's complaint that she had not been timely served with the motion. The Court did not rule on the motion until November 18, 2004. Even then, the denial was without prejudice to its being refiled in the main case. In fact, there has never been a final ruling on the motion since Shao never refiled the motion in the main case. The permanent injunction sought by the Trustee in the adversary proceeding did not become moot until November 18, 2004 at which time the Trustee consented to the dismissal of the adversary proceeding. Thus, Shao is mistaken in asserting that the Trustee persisted in prosecuting a moot action.

Finally, the Trustee reiterates that she is clearly entitled to damages against Shao pursuant to 11 U.S.C. § 105(a). She contends that the facts set forth in In re DeLorean Motor Co., 991 F.2d 1236, 1241-42 (6th Cir. 1993), in which sanctions were granted on the basis of this statute, are strikingly similar to the facts in the instant case. In DeLorean, she notes, a chapter 7 trustee sought damages for having to file a complaint seeking injunctive relief for a violation of the Barton Doctrine by attempting to sue both a trustee and the trustee's counsel. The Sixth Circuit affirmed the bankruptcy court's order granting the trustee's request for compensatory sanctions. Id.

11

**B. DECISION**

The Court has authority pursuant to 11 U.S.C. § 105(a) to impose compensatory sanctions against a party for willful misconduct causing damages to the bankruptcy estate. See In re Dyer, 322 F.3d 1178, 1189 (9th Cir. 2003). In Dyer, a creditor violated the automatic stay by recording a deed of trust postpetition. The bankruptcy court imposed sanctions. The district court reversed the order. The Court of Appeals reversed the district court, upholding the compensatory portion of the bankruptcy court's sanction award.[11]

The Dyer court reaffirmed the principle established in In re Rainbow Magazine, Inc., 77 F.3d 278, 284 (9th Cir. 1996), that a bankruptcy court has both the power to impose civil contempt sanctions and the inherent power to sanction bad faith litigation under 11 U.S.C. § 105(a). It distinguished between this inherent authority and civil contempt authority as follows:

> Civil contempt authority allows a court to remedy a violation of a specific order (including "automatic" orders, such as the automatic stay or discharge injunction). The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics. *Fink v. Gomez*, 239 F.3d 989, 992-93.
>
> The inherent sanction authority differs from the civil contempt authority in an additional respect as well. Before imposing sanctions under its inherent sanctioning authority, a court must make an explicit finding of bad

---

[11] However, it affirmed the district court's reversal of the punitive damage award. Id. at 1192-94.

12

> faith or willful misconduct. *Id.* In this context, "willful misconduct" carries a different meaning than the meaning employed in the context of determining whether an individual is entitled to damages under § 362(h) or a contempt judgment under § 105(a) for an automatic stay violation. With regard to the inherent sanction authority, bad faith or willful misconduct consists of something more egregious than mere negligence or recklessness. *Id.* at 993-94. Although "specific intent..." may not be required in the contempt context, *Pace*, 67 F.3d at 191, such specific intent or other conduct in "bad faith or conduct tantamount to bad faith," *Fink*, 239 F.3d at 994, is necessary to impose sanctions under the bankruptcy court's inherent power.

Id. at 1196.

The Court finds that Shao engaged in improper litigation tactics in issuing and refusing to withdraw the Subpoena. Moreover, based on the facts and circumstances presented here, the Court finds that Shao acted in bad faith in engaging in these tactics. For that reason, the Court concludes that the Trustee's motion for compensatory sanctions should be granted.

The Court bases its finding that issuing the Subpoena was an improper litigation tactic on two independent grounds. First, as the Trustee advised Shao, the law is clear that it is improper to sue a bankruptcy trustee or her counsel without first obtaining leave of the appointing bankruptcy court. See In re Crown Vantage, Inc., 421 F.3d 963, 970 (9th Cir. 2005)(applying doctrine to liquidating trustee appointed under chapter 11 plan). The Crown Vantage court stated as follows:

> We join our sister circuits in holding that a party must first obtain leave of the

13

> bankruptcy court before it initiates an action in another forum against a bankruptcy trustee **or other officer appointed by the bankruptcy court** for acts done in the officer's official capacity. See Muratore v. Darr, 375 F.3d 140, 147 (1st Cir. 2004); Carter v. Rodgers, 220 F.3d 1249, 1252 (11th Cir. 276 (2d Cir. 1996); Allard v. Weitzman (In re DeLorean Motor Co.), 991 F.2d 1236, 1240 (6th Cir. 1993). In our circuit, the doctrine was recognized by our Bankruptcy Appellate Panel in Kashani v. Fulton (In re Kashani), 190 B.R. 875, 883-85 (9th Cir. BAP 1995).

Id. at 970 [emphasis added]. See also In re General Carrier Corp., 258 B.R. 181, 187 (Bankr. 9th Cir. 2001).

A chapter 7 trustee must obtain court approval to employ counsel. Thus, the attorney for the trustee is an officer of the court and is also protected by the Barton Doctrine. See In re Balboa Improvements, Ltd., 99 B.R. 966, 970 (Bankr. 9th Cir. 1989), cited in DeLorean Motor, 991 F.2d at 1241. This is not a new rule. As early as 1989, the Balboa court stated: "It is well settled that [a debtor's attorney] cannot be sued in state court without leave of the bankruptcy court for acts done in his official capacity and within his authority as an officer of the court."), citing In re Campbell, 13 B.R. 974, 976 (Bankr. D. Idaho 1981). While there are no reported cases dealing with subpoenas rather than suits, the principle is the same. The bankruptcy court has the right to control an attempt to exercise legal process against its officers.

Second, even without regard to this rule of bankruptcy law, the issuance of the Subpoena was clearly improper. As noted above, the events upon which the State Court Action is based

14

happened over one year before the Trustee was appointed and Stromsheim was employed. There was no rational ground for deposing Stromsheim in connection with that action. Moreover, the documents requested by the Subpoena make it clear that Shao was attempting to use the Subpoena to investigate the Trustee's administration of the bankruptcy estate. This was an abusive use of the state court process.

Shao's bad faith in engaging in these improper litigation tactics was demonstrated in several other ways as well. First, she attempted to defend against her conduct by contending that it was uncertain whether the Barton Doctrine applied to a trustee's counsel. However, if Shao was uncertain, she acted in bad faith by not first asking for guidance from the bankruptcy court. Second, Shao engaged in delaying tactics in connection with the Trustee's motion. She repeatedly asked for (and obtained) continuances of the hearings, including the October 6, 2005 hearing. She filed a notice of unavailability for an extended period of time. Finally, as noted above, she filed further opposition to the motion after the briefing schedule was closed and cited new cases at oral argument, offering no justification for doing so.

Finally, Shao contends that, even if sanctions are granted, they should not be granted for any services performed after she filed her motion for leave to depose Stromsheim on May 25, 2004. The Court disagrees. As the Trustee points out, Shao refused to withdraw the Subpoena and continued to argue throughout the proceeding that she was entitled to depose Stromsheim as a

15

percipient witness to the State Court Action. Based on the foregoing, the Court will grant an order for sanctions against Shao in the full amount requested. Even so, as noted above, this will not fully compensate the estate for the expense caused by Shao's improper conduct.

**CONCLUSION**

The Court will grant the Trustee's motion for an award of compensatory sanctions against Shao in the amount of $29,062.50 pursuant to its inherent authority under 11 U.S.C. § 105(a). For the reasons stated above, the Court finds and concludes that Shao engaged in improper litigation conduct in bad faith, thereby damaging the bankruptcy estate in an amount in excess of the award. Counsel for the Trustee is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

```
 1                        COURT SERVICE LIST
 2    Reidun Stromsheim
 3    Stromsheim & Associates
      353 Sacramento St., Ste. 860
 4    San Francisco, CA 94111

 5    Linda Shao
      Law Offices of Linda Shao
 6    20380 Town Center Lane, Ste. 218
      Cupertino, CA 95014
```